Statement.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### A. L. HUNT v. COMMONWEALTH.

January 18, 1923.

INTOXICATING LIQUORS—*Unlawful Possession of Intoxicating Liquors—Evidence Held Sufficient to Sustain Conviction—Case at Bar.*—In the instant case accused was convicted of keeping and storing ardent spirits in the yard of a pool room. Evidence for the Commonwealth was to the effect that a man wearing a light gray hat, later identified by a witness as the accused, was seen to enter the pool room carrying several packages, which he had taken from an automobile. Officers immediately entered the pool room and searched the premises, and on a roof partly covering the yard were found bundles containing whiskey and a bundle of like kind was found in the yard. There were four entrances to the yard, one through the pool room and three others. Evidence for the Commonwealth apparently showed that only the entrance from the pool room was in use. Accused denied all knowledge of the spirits found, denied that he owned a light hat at the time of his arrest, and introduced evidence to show that some of the other entrances to the yard were in use by others, and that the pool room was used by many people, any of whom mght have placed the whiskey where it was found.

*Held:* That, under the evidence, the Supreme Court of Appeals could not say that the verdict was plainly wrong or without evidence to support it, and therefore the finding of the jury and the judgment of the trial court could not be disturbed.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Affirmed.*

The opinion states the case.

*G. T. Elliott, Jas. S. Barron* and *Nathaniel T. Green,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

A. L. Hunt, the accused, having been convicted under the fourth count of an indictment charging that he did "feloniously keep and store ardent spirits in a yard, said yard not then and there being his *bona fide* home," was sentenced to three months' confinement in jail and to pay a fine of $250.00. He is here complaining of that judgment.

The only assignment of error is that the evidence adduced on behalf of the Commonwealth was not sufficient to establish his guilt of the charge upon which he was convicted.

From the testimony introduced on behalf of the Commonwealth the jury were warranted in finding the following facts: The accused conducted a pool room on City Hall avenue, in the city of Norfolk. On the 24th day of December, 1921, W. B. Royster, while looking diagonally across the street from a window on the eleventh floor of the Royster building, saw a Ford automobile driven up in front of the accused's pool room and saw a man get out of the machine and take several packages from it into the pool room and saw another take two or more packages from the automobile into the pool room. About twenty minutes later two police officers looking diagonally across the street from the same window saw several bundles lying on a roof which partly covered the yard in the rear of the accused's pool room. While the officers were still looking out of the window, Royster pointed out to them a man wearing a light gray hat, then standing in front of the pool room, as the man

he had seen about twenty minutes before carrying the two or more packages into the pool room. One of the officers, who was well acquainted with the accused, recognized the man pointed out by Royster to be the accused.

The officers went immediately to the pool room and recovered the bundles from the roof, each of which was found to contain ten pints of corn whiskey, wrapped in newspaper and tied with strings. A bundle of like kind was found on the ground in the back yard, just below the place where the bundles were on the roof, and, though broken open, contained five pints of corn whiskey. The bottles and the whiskey found in all the bundles were the same kind and all the packages corresponded in general appearance with the packages which Royster had seen taken from the automobile and carried into the pool room.

There were four door entrances to the back yard, the first door, which was open, leading from the rear office of the pool room; the second from a cafe adjacent to the back yard on the east, which was locked and in disuse; the third from a repair shop adjacent to the cafe on the south, which was nailed and fastened and apparently in disuse, rubbish being piled up more than a foot high on the yard side and cobwebs extending from the door to the facing thereof; and the fourth from a garage adjacent on the west, which was at the time of their visit fastened from the inside by means of a staple and hook.

The bundle of whiskey found on the ground was about three feet from the open door of the office of the pool room, and about the same distance from the closed door leading to the garage.

The accused testified that he did not own the whiskey or know of its existence; that the only light gray hat owned by him had been purchased since his arrest; that he did not carry any bundles from the automobile into

his pool room and had not been in front of the pool room for some hours prior to the time the officers followed him into the pool room on his return thereto, and placed him under arrest; that the pool room was used by many people, any of whom might have placed the whiskey where it was found; that the third door was in use and had been recently used for the sale of equipment owned by the repair shop, and that the fourth door leading to the garage was in constant use at all times.

A. Sutherland, Hunt's partner, testified that he knew nothing of the existence of the whiskey and corroborated Hunt.in his statement about the doors leading to the back yard, and also testified that for at least thirty minutes prior to the arrival of the officers he and the accused had been standing directly in front of the aforesaid restaurant and did not see the automobile referred to by the witness, Royster.

Garland Smith, a witness for the defense, testified that he was manager of the garage and vulcanizing plant; that his employees used the yard in question as a place to repair tires; that the door leading to the yard from his place was constantly used, and until about two months prior to the raid was constantly open; that finding a number of tires and some equipment had been stolen about two months before the raid he placed a hook upon the door, but that the door was only locked at night.

Upon the whole testimony the jury, after being fully instructed by the court as to the law, and hearing the arguments of counsel, found the accused guilty of the unlawful possession of whiskey, as charged in the fourth count of the indictment. The trial judge, who saw and heard the witnesses testify, declined to disturb the verdict and entered a final judgment thereon. It was for the jury to settle the conflicting statements in the tes-

timony, all of which they have decided adversely to the accused.

Without further discussion of the evidence it is sufficient to add that the case is clearly one in which we cannot say the verdict is plainly wrong or without evidence to support it. We cannot, therefore, disturb the finding of the jury or the judgment of the trial court.

*Affirmed.*